UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────────

Alexandria L. Wieneke,

                     Plaintiff,

v.                                                        CASE # 18-cv-00637

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.

─────────────────────────────────────────────

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ.<br>AMY C. CHAMBERS, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | MARIA PIA FRAGASSI<br>SANTANGELO, ESQ.<br>RICHARD W. PRUETT, ESQ.<br>LAURA RIDGELL BOLTZ, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record is **DENIED**, the Defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on October 14, 1968, and graduated high school. (Tr. 48, 170, 814). Generally, Plaintiff's alleged disability consists of depression, cervical myelopathy, paraplegia, cervical myofascial pain, cord compression myelopathy, neurogenic bladder, and traumatic brain injury. (Tr. 208). Her alleged disability onset date is December 5, 2010[1]. (Tr. 15). She previously worked in construction, production and as a day laborer. (Tr. 198).

### B. Procedural History

On September 9, 2014, Plaintiff applied for a period of Supplemental Security Income ("SSI") benefits, under Title XVI, of the Social Security Act. (Tr. 15, 135). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 13, 2017, Plaintiff appeared before the ALJ, Stephen Cordovani. (Tr. 11-36). On October 4, 2017, ALJ Cordovani issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 11-36). On April 6, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). Thereafter, Plaintiff timely sought judicial review in this Court

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since May 14, 2013, the date the claimant became disabled (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[1] The ALJ reopened Plaintiff's prior application submitted August 12, 2013. (Tr. 15).

2. From May 14, 2013 through April 12, 2015, the period during which the claimant was under a disability, the claimant had the following severe impairments: obesity, degenerative disc disease of the cervical spine with ACDF of C5-C6 to C6-C7 and cervical myelopathy, asthma, chronic obstructive pulmonary disease (COPD), neurogenic bladder and lumbar degenerative disc disease (20 C.F.R. 416.920(c)).

3. From May 14, 2013 through April 12, 2015, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that, from May 14, 2013 through April 12, 2015, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a) except she can occasionally climb ramps and stairs, occasionally balance, and never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. She can perform no overhead work and frequently reach, handle, finger, and feel. She can less than frequently rotate, flex, and extend his (sic) neck. She must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other respiratory irritants. She can sit for less than six hours per day and stand and walk less than two hours per day.

5. The claimant was a younger individual age 45-49, on the established disability onset date (20 C.F.R. 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 416.964).

8. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 C.F.R. 416.968).

9. From May 14, 2013 through April 12, 2015, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 416.960(c) and 416.966).

10. The claimant was under a disability, as defined by the Social Security Act, from May 14, 2013 through April 12, 2015 (20 C.F.R. 416.920(g)).

11. The claimant has not developed any new impairment or impairments since April 13, 2015, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from May 14, 2013 through April 12, 2015.

12. Beginning April 13, 2015, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.994(b)(5)(i)).

13. Medical improvement occurred as of April 13, 2015, the date the claimant's disability ended (20 C.F.R. 416.994(b)(1)(i)).

14. The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 C.F.R. 416.994(b)(1)(iv)(A)).

15. After careful consideration of the entire record, I find that, beginning April 13, 2015, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a) except she can occasionally climb ramps and stairs, occasionally balance, and never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. She can perform no overhead work and frequently reach, handle, finger, and feel. She can less than frequently rotate, flex, and extend her neck. She must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other respiratory irritants. She can alternate between sitting and standing at the work station.

16. The claimant is still unable to perform past relevant work (20 C.F.R. 416.965).

17. The claimant's age category has not changed since April 13, 2015 (20C.F.R. 416.963).

18. The claimant's education level has not changed (20 C.F.R. 416.964).

19. Beginning April 13, 2015, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

20. Beginning April 13, 2015, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.960(c) and 416.966).

21. The claimant's disability ended April 13, 2015, and the claimant has not become disabled again since that date (20 C.F.R. 404.1594(1)(8)).

(Tr. 15-40).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff's brief has numerous arguments, all of which only apply to after the closed period. In the layout of her brief, she makes essentially three separate arguments in support of her motion for judgment on the pleadings but then under each heading she presents additional arguments.

4

First, Plaintiff argues the ALJ failed to address and analyze evidence of her impairments and failed to account for them in the RFC. (Dkt. No. 14 at 15 [Pl.'s Mem. of Law]). Second, the ALJ's RFC is unsupported by substantial evidence. (Dkt. No. 14 at 25). Lastly, Plaintiff argues the ALJ failed to further develop the record as necessary. (Dkt. No. 14 at 27).

### B.   Defendant's Arguments

In response, Defendant asserts via three responsive arguments that substantial evidence supported the ALJ's decision and presents three arguments. First, Defendant argues the ALJ properly considered whether Plaintiff met or medically equaled a listing. (Dkt. No. 16 at 20 [Def.'s Mem. of Law]). Second, the ALJ reasonably assessed and adopted the medical opinions and more specifically addressed in this opinion. (Dkt. No. 16 at 22). Third, the ALJ reasonably relied more heavily on the objective medical evidence than Plaintiff's subjective complaints. (Dkt. No. 16 at 24).

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.	ANALYSIS

As discussed above and at length in Defendant's brief, Plaintiff makes numerous arguments. (Dkt. No. 16 at 15). Within 15 pages, Plaintiff has over 90 case citations with little analysis or application to the facts of this case. Plaintiff appears to merely assert all possible arguments in Social Security matters, whether or not such arguments actually apply to this case. Issues that are not sufficiently argued in a plaintiff's briefs are considered waived. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

In support of boilerplate statements, Plaintiff repeatedly cites to "Tr. 1-1391" as evidentiary support, which constitutes the entire record. (Dkt. No. 15 at-30). For example, Plaintiff states "the combination of Plaintiff's impairments may cause off-task time and missed work. (Tr. 1-1391)." (Dkt. No. 14 at 22). The Court is not required to comb the record in search of evidence in support of Plaintiff's position. *See, e.g., Dietrich v. E.I. Du Pont de Nemours & Co.,* No. 02–CV–678S, 2004 WL 2202656, *9, n8 (W.D.N.Y. Sept. 28, 2004) ("[n]ot only has Plaintiff failed to provide any of his own medical evidence in support of his *prima facie* case, but he has also failed to include citations to the medical records Defendant included as exhibits in its moving papers. It is not this Court's duty, obligation or function to search the record for evidence supporting Plaintiff's case,

and this Court declines to do so."). Plaintiff never argues there was a misapplication of the medical improvement standard but rather that the RFC, after the date of medical improvement was found, is not supported by substantial evidence. It is disingenuous to argue the only errors by the ALJ occurred after the closed period, particularly in regard to the mental impairments that were not found severe, while simultaneously arguing they were long-standing, chronic impairments. Similarly, Plaintiff argues the ALJ failed to account for off-task and missed workday limitations due to chronic pain and urinary issues, but only after the date of medical improvement, despite also arguing they were long-standing and chronic. (Dkt. No. 14 at 25).

Plaintiff's brief also cites extensively to medical records prior to April 2015, when the ALJ found Plaintiff was disabled. The ALJ found Plaintiff disabled from May 14, 2013 through April 12, 2015. Therefore, the issue is whether her improved functional abilities allowed her to be able to work as of April 13, 2015. Once the Commissioner determines that a claimant is disabled, he "is entitled to a presumption that the classification will not change unless the condition, governing statutes, or regulations change." *Nascimento v. Colvin*, 90 F. Supp. 3d 47, 53 (E.D.N.Y. 2015) (citation omitted). Thus, if the ALJ finds the claimant disabled for a closed period, that finding "must be demonstrated by substantial evidence of medical improvement in the claimant's impairment or combination of impairments such that the claimant is now able to engage in substantial gainful activity." *Id.* (citing *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002)); *see also* 20 C.F.R. §§ 404.1594(a), 416.994(a) (effective Aug. 24, 2012 to Mar. 26, 2017). In the instant case, the Court finds the ALJ's decision of medical improvement was supported by substantial evidence.

**A. The ALJ properly addressed all physical and mental impairments**

Subsequent to April 2015, at step two, the ALJ determined that Plaintiff had "severe" impairments including obesity, degenerative disc disease of the cervical spine with ACDF of C5-C6 to C6-C7 and cervical myelopathy, asthma, COPD, neurogenic bladder, and lumbar degenerative disc disease (Tr. 19, 29). The ALJ found Plaintiff's irritable bowel syndrome, depression, personality disorder, and post-traumatic stress disorder (PTSD) nonsevere (Tr.19-21, 29), and Plaintiff's alleged history of traumatic brain injury in 2009 not medically determinable. (Tr. 19). These are the same findings for the previous period from May 2013 through April 2015, which is not an issue on appeal. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically assessing Listings 1.04 (spine), 12.04 (mental), 3.02 (COPD), 3.03 (asthma), and considered equivalency for neurogenic bladder which is not specifically listed (Tr. 20-21, 29).

Plaintiff claims the ALJ "failed to include and consider evidence" directly related to her neurological and nerve disorders, LS degenerative disorder, posttraumatic stress disorder (PTSD), personality disorder and other impairments disorders at Step Two." (Dkt. No. 14 at 15). At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). In regard to the mental impairments, the ALJ's decision included discussion of evidence, including a consultative examination. Plaintiff asserts

the mental impairments were chronic and long-standing but even a psychiatrist in September 2014 (prior to the relevant time period), stated symptoms were well controlled with medication. (Tr. 794). Plaintiff also had normal mental status examinations from other providers in February 2015 and April 2015. (Tr. 600, 875, 878). Plaintiff testified that she had not sought any mental health treatment since September 2014. (Tr. 66). Additionally, Plaintiff underwent a psychological consultation with Dr. Santarpia in April 2015. (Tr. 814-17). Dr. Santarpia opined that Plaintiff had no significant mental functional limitations other than a mild impairment in performing complex tasks and making appropriate decisions. (Tr. 816). State agency psychologist Dr. Harding similarly opined that due to a lack of any functional impediment, Plaintiff's mental impairments were not severe (Tr. 96). As discussed above, Plaintiff fails to point to any evidence of greater functional limitations during the relevant time period.

Plaintiff brings up various mental health diagnoses and argues they were not individually considered. However, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or

a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)). Here the ALJ properly proceeded to and applied the "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir.2008).

It appears one of Plaintiff's arguments is also that the claimant's mental impairments and spine disorders were not properly considered under the listings at step three of the evaluation. (Dkt. No. 14 at 19). Plaintiff cites regulations about personality disorder (listing 12.08) versus PTSD (listing 12.15). However, the Regulations only require an ALJ to consider severe impairments at step three. 20 C.F.R. § 404.1520(a)(4)(iii)(d). Even the case law cited by Plaintiff pertains to a severe impairment being considered for a listing. (Dkt. No. 14 at 19). There were no severe mental health impairments found at step two to even be considered at step three. The ALJ did assess listing 1.04 for the spinal issues. Plaintiff argues that there was a period of paralysis that would medically equal the listing, however, that period occurred during the period for which she was already found disabled. She had spinal surgery and physical therapy to remedy it. (Tr. 24, 51-54). Therefore, any functional limitations from the paralysis, and possible medical equivalency arguments, were prior to the period being considered.

Another apparent argument is that the ALJ failed to account for the need to self-catheterize four times a day (Dkt. No. 14 at 22), presumably claiming that there would be limitations in the ability to concentrate or a need for additional bathroom breaks. However, Plaintiff fails to identify or cite medical records about what functional limitations should have been adopted. In her brief she made the broad, generalized statement that the "ALJ failed to account for any off-task or missed workday limitations due to the combination of her chronic pain, numbness, urinary issues

11

and catheter use, panic attacks, stressors, and other symptoms, all well-supported by the longitudinal record irrespective of the ALJ's RFC findings. (Tr. 1-1391)." (Dkt. No. 14 at 25). Again, issues that are not sufficiently argued in a plaintiff's brief are considered waived. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### B. ALJ properly assessed medical opinion evidence

Again, Plaintiff's arguments are not clearly defined but she makes broad statements that the ALJ gave improper weight to opinion evidence, failed to get a treating opinion, and subsequently used lay opinion evidence in formulating the RFC. (Dkt. No. 14).

Arguments that the ALJ failed to fully develop the record are baseless because the ALJ cited to significant clinical findings, regarding Plaintiff's physical and mental functional abilities during the relevant time period, and also sent Plaintiff for both physical and mental consultative examinations. It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), *see also Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010). Similarly, the argument that the case should be remanded for lack of a treating physician opinion is unpersuasive because it is not correct. *See Scouten v. Colvin*, No. 15-CV-76S, 2016 WL 2640350, at *4 (W.D.N.Y. May 10, 2016) ("[t]here is no error where ... an ALJ bases his RFC on Plaintiff's own testimony" together with relevant medical evidence). The ALJ properly sought an opinion of a consultative examiner to address the insufficiency in the record created by the lack of a treating medical source opinion.

Plaintiff argues that the opinion of the state agency psychologist, Dr. Harding, is not to be relied upon because he did not personally examine Plaintiff. (Dkt. No. 14 at 28). This is not a valid

argument. *See* 20 C.F.R. § 416.927(e)(2)(i) (State agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

Consultative examiner Dr. Santarpia did not diagnose personality disorder, PTSD, or brain injury, so Plaintiff argues the opinion should not be relied upon. (Dkt. No.14 at 21). Dr. Santarpia's role was not to just diagnose impairments but to determine mental functional limitations, regardless of cause. His normal clinical findings supported his opinion that Plaintiff had only mild limitations.

Similarly, Plaintiff avers generally that the ALJ should not have relied on physical consultative examiner Dr. Balderman's opinion. (Dkt. No. 14 at 23-24). Plaintiff claims Dr. Balderman's opinion was "contradicted by the record as a whole", dismayingly again citing to "Tr. 1-1391", the entire record on appeal. Dr. Balderman's opinion was supported by his own normal clinical findings. (Tr. 819-820). Medical records from the relevant time period supported his opinion. In May 2015, Plaintiff reported that her pain was better and physical therapy had helped her gain strength in her hands. (Tr. 898). She also showed improved cervical range of motion. (Tr. 899). She also received injections that improved her symptoms. (Tr. 908). Physical therapy resulted in improvement in her low-back pain and strength, and her ability for prolonged sitting. (Tr. 859, 861, 864, 866-67). X-rays of Plaintiff's lumbar spine in October 2015, showed only mild spondylosis and facet arthropathy at L3-S1. (Tr. 931). In February 2016, Dr. Bath observed Plaintiff's gait was essentially normal and noted her pain was fairly well controlled .(Tr. 967-68).

In November 2016, Plaintiff reported improvement in her pain intensity on Pregabalin and Amitriptyline, and overall described her functional levels as improved. (Tr. 1004).

Notably, as ignored by Plaintiff, the ALJ did not adopt Dr. Balderman's opinion. Dr. Balderman found that Plaintiff's only functional limitation was a mild limitation with frequent changes of position to the head. (Tr. 820). The ALJ gave the opinion little weight, as it did not include other severe impairments and functional limitations. (Tr. 34). Thus, the ALJ reasonably relied not only on the opinion, but looked to the record as a whole to formulate Plaintiff's RFC. *See* 20 C.F.R. § 416.945(a)(3) (residual functional capacity is assessed based on all of the relevant medical and other evidence in the record).

### C. Substantial Evidence of Improvement

Medical findings show Plaintiff's physical impairments had improved and subsequently increased her RFC. By February 2015, Plaintiff was showing improvement from her back pain along with increased strength in her hands and better range of motion with the help of physical therapy. (Tr. 699-700). By the time she began pain management with Dr. Bath, Plaintiff's condition had improved and her functional abilities were consistent with the RFC. As of April 2015, Plaintiff had some restricted movement in her upper spine, but the rest of her spine was normal and she displayed full strength in all major muscle groups. (Tr. 878). Special tests for nerve root disease were negative. (Tr. 878). Her gait was normal, and she could walk several steps, then turn, and come back. (Tr. 878). Her balance was easy, her arms swung at her sides, and she accomplished turns smoothly. (Tr. 878). Her cranial nerves and deep tendon reflexes were grossly intact. (Tr. 878).

Dr. Balderman's consultative examination confirmed Plaintiff's functional abilities. On examination, Dr. Balderman observed Plaintiff was in no acute distress, her gait was normal, and

she could walk on her heels and toes with difficulty. (Tr. 819). She could squat 30 percent of full. (Tr. 819). Her stance was normal. (Tr. 819). She used no assistive device. (Tr. 819). She needed no help changing for the exam or getting on and off the exam table. (Tr. 819). She was able to arise from a chair without difficulty. (Tr. 819). Her lungs were clear to auscultation and had normal diaphragmatic motion. (Tr. 819). Her cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (Tr. 819). She had no scoliosis, kyphosis, or abnormality in thoracic spine. (Tr. 819). Her lumbar spine had full flexion, extension, lateral flexion bilaterally and full rotary movement bilaterally. (Tr. 819). Straight leg raising was negative (normal) bilaterally. (Tr. 819-20). She had full range of motion of her shoulders, elbows, forearms, and wrists bilaterally. (Tr. 820). She also had full range of motion of her hips, knees, and ankles bilaterally. (T. 820). There was no evident subluxations, contractures, ankylosis, or thickening. (Tr. 820). Her joints were stable and nontender with no redness, heat, swelling, or effusion. (Tr. 820). Her deep tendon reflexes were normal in all extremities. (Tr. 820). She had no sensory deficits. (Tr. 820). Her strength in her upper and lower extremities was full at 5/5. (Tr. 820). There was no muscle atrophy evident. (Tr. 820). Her hand and finger dexterity was intact, and her grip strength was 5/5 bilaterally. (Tr. 820).

In May 2015, Plaintiff reported that her pain was better and physical therapy had helped her gain strength in her hands. (Tr. 898). She also showed improved cervical range of motion. (Tr. 899). She also received injections that improved her symptoms. (Tr. 908). Physical therapy resulted in improvement in her low-back pain and strength, and her ability for prolonged sitting. (Tr. 859, 861, 864, 866-67). X-rays of Plaintiff's lumbar spine in October 2015, showed only mild spondylosis and facet arthropathy at L3-S1. (Tr. 931). In February 2016, Dr. Bath observed Plaintiff's gait was essentially normal and noted her pain was fairly well controlled. (Tr. 967-68).

In November 2016, Plaintiff reported improvement in her pain intensity on Pregabalin and Amitriptyline, and overall described her functional levels as improved. (Tr. 1004). Thus, the medical evidence documented improved functioning consistent with the RFC, and the only medical opinion on physical limitations given for the relevant time period suggested even less restrictions than those found by the ALJ.

The ALJ properly found Plaintiff's claims of debilitating symptoms, as of April 13, 2015, were inconsistent with both medical evidence and her reported activities. (Tr. 31, 34). *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (The evaluation of a Plaintiff's subjective complaints is a matter within the sole province of the ALJ, as trier of fact, to determine); *Mimms v. Sec'y of Health and Human Servs.*, 750 F.2d 180, 186 (2d Cir. 1984) (It is well within the discretion of the agency to evaluate the veracity of Plaintiff's subjective complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology). The bald assertions that "plaintiff is credible. SSR 16-3p" is again not sufficiently argued and considered waived. (Dkt. No. 14 at 27). As outlined above, clinical findings demonstrated Plaintiff retained greater functional abilities than she claimed. *See* 20 C.F.R. § 416.929(c)(4) (stating an ALJ must consider whether there are conflicts between a claimant's statements and the rest of the evidence); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (In determining a claimant's residual functional capacity, an ALJ must evaluate a claimant's subjective complaints and determine whether they are consistent with the record as a whole).

The ALJ also reasonably noted that Plaintiff's activities of driving, shopping, cooking, sometimes fishing and hunting, and reporting to her doctor that she was working on a chicken coop, were inconsistent with her claims of debilitating symptoms. (Tr. 34, 220-221, 969). *See* 20 C.F.R. § 416.929(c)(3)(i) (stating an ALJ must consider a claimant's activities); *Rusin v. Berryhill*,

726 F. App'x 837, 840 (2d Cir. 2018) (severe limitations claimed by the plaintiff were inconsistent with the plaintiff's report that he "cooked simple meals daily, left the house daily, can drive, and shopped for groceries every two weeks"); *Poupore*, 566 F.3d at 307 (ALJ may rely on such activities to show that a claimant's allegation that she was disabled was not consistent with the medical and other evidence). Thus, the ALJ provided well-supported reasons why he did not fully accept Plaintiff's subjective complaints.

Indeed, the substantial evidence standard is so deferential that there could be "two contrary rulings on the same record [and both] may be affirmed as supported by substantial evidence." *Cage*, 692 F.3d at 127 (citing *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)). "[O]nce an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder *would have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis in original; internal quotation omitted). Some of Plaintiff's arguments are a disagreement with how the ALJ evaluated the evidence. *See* Dkt. No. 14. When substantial evidence of record supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. Jan. 10, 2012) (summary order); *Rouse v. Colvin*, No. 14-CV-817S, 2015 WL 7431403, at *6 (W.D.N.Y. Nov. 23, 2015) (unpublished). In this case, the ALJ meticulously weighed the medical evidence, including treatment notes, objective findings, medical opinions, and Plaintiff's testimony to reach an RFC determination that reflected his analysis of the credible evidence of record. (Tr. 29-36).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is
**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is

**GRANTED**.


Dated: November 4, 2019                    *J. Gregory Wehrman*
       Rochester, New York                    HON. J. Gregory Wehrman
                                                          United States Magistrate Judge